**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

STONCOR GROUP, INC.,
doing business as                    1:19-cv-01132-NLH-AMD
STONHARD,

       Plaintiff,                        **OPINION**

   v.

CIPRIAN INGENIERIA
TERMINACIONES S.R.L.,

       Defendant.

_____

**APPEARANCES:**

ZACHARY WINTHROP SILVERMAN
FISHKIN LUCKS LLP
ONE RIVERFRONT PLAZA, SUITE 410
NEWARK, NJ 07102

MITCHELL G. BLAIR
ANTHONY F. STRINGER
KELLY A. CALLAM
CALFEE, HALTER & GRISWOLD LLP[1]
THE CALFEE BUILDING
1405 EAST SIXTH STREET
CLEVELAND, OH 44114

   *On behalf of Plaintiff*

**HILLMAN**, District Judge

   Presently before the Court is the motion of Plaintiff,

StonCor Group, Inc., for default judgment in its favor and

_____

[1] Counsel from Calfee, Halter & Griswold, LLP note that they will
be seeking *pro hac vice* status in this Court and that *pro hac
vice* motions are forthcoming, but to date counsel has failed to
file such motions.  If counsel wish to appear pro hac vice in
this matter, they must comply with Local Civil Rule 101.1.

against Defendant, Ciprián Ingeniería Terminaciones S.R.L. Plaintiff, which is located in Maple Shade, New Jersey, manufacturers commercial flooring products.  Defendant, which is located in Santo Domingo, Dominican Republic, is a construction contractor that installs flooring products in commercial and industrial buildings.

Plaintiff filed its complaint on January 29, 2019. Plaintiff seeks a declaration that it has no obligation to arbitrate a commercial business dispute in the Dominican Republic involving Defendant and a Dominican Republic hospital because it did not consent to arbitration.  Plaintiff is also seeking a declaration that any decision emanating from the Dominican Republic arbitration proceeding cannot be enforced against Plaintiff, particularly in the United States.

Because Defendant failed to file an answer or otherwise appear in the action, Plaintiff requested the Clerk to enter default, which the Clerk did on September 4, 2019.  Plaintiff filed its instant motion for default judgment on October 23, 2019.  To date, Defendant has not appeared in the action.

For the reasons expressed below, the Court must deny Plaintiff's motion.

## BACKGROUND

According to Plaintiff's complaint,[2] on September 10, 2013, Defendant entered into a contract with a hospital, the Center of Diagnostics, Advanced Medicine and Medical Conferences and Telemedicine ("Cedimat"), located in Santo Domingo, Dominican Republic.  Defendant was to supply all the materials, equipment and labor necessary to install industrial floors in Cedimat's cardiovascular unit.

Beginning in March 2014, Defendant ordered flooring materials from Plaintiff.  Defendant placed twelve orders between March 19, 2014 and June 15, 2015 totaling over $1 million.  Plaintiff shipped the orders to Defendant in the Dominican Republic.

In November 2015, Cedimat allegedly observed chips, scratches, stains and deterioration in the general appearance of certain flooring materials installed by Defendant.  An independent consultant hired by Cedimat issued a technical assessment attributing these defects to faulty installation and to project contractors who did not take precautionary measures with the floor.  Defendant denied these findings.

---

[2] The Court summarizes the relevant facts from Plaintiff's complaint.  Comdyne I. Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990) (explaining that on a motion for default judgment, every "well-pled allegation" of the complaint, except those relating to damages, are deemed admitted).

On July 3, 2017, Defendant submitted to Cedimat a proposal for floor repairs, in which Defendant offered to repair damage to the floors it installed, utilizing supervision and technical support from Plaintiff.  On September 13, 2017, Cedimat issued a written response rejecting this proposal.

Pursuant to the contract between Defendant and Cedimat, the parties entered into arbitration on December 20, 2017 in the Centro de Resolucion Alternativa de Controversias in Santo Domingo, Dominican Republic.  Plaintiff contends that it was included as a party to the arbitration, despite not having a contractual relationship with Cedimat which required it to be a part of the arbitration.

Plaintiff claims that over its repeated objections, it is being "coerced" to arbitrate the Cedimat dispute with Defendant in the Dominican Republic in violation of its rights and the Federal Arbitration Act.  Plaintiff contends that it is not obligated to participate in the Dominican Republic arbitration and that any decision rendered there cannot be enforced against it, particularly in the United States, because it was not a party to the Ciprián/Cedimat Agreement, and it did not otherwise consent to arbitrate any claims pertaining to the Cedimat project.  Plaintiff further contends that time is of the essence because the Dominican Republic arbitration is currently pending and set to move forward.  Plaintiff further contends that a

4

judicial declaration and determination from this Court will terminate an actual controversy.

Because Defendant has failed to appear in this action, and default has been entered against it, Plaintiff asks this Court to enter judgment in Plaintiff's favor that Plaintiff is not obligated to participate in the Dominican Republic arbitration involving Defendant and Cedimat, and that any decision emanating from the Dominican Republic arbitration cannot be enforced against Plaintiff.

## DISCUSSION

### A.   Subject Matter Jurisdiction

Plaintiff has brought this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202, and contends that subject matter jurisdiction exists over this matter pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., and 28 U.S.C. § 1332 because the parties' citizenship is diverse and the amount in controversy exceeds $75,000.

### B.   Default

The first step in obtaining a default judgment is the entry of default.  "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the

Clerk must enter the party's default."  Fed. R. Civ. P. 55(a).
The Clerk entered default on September 4, 2019.

### C.   Default Judgment

"Federal Rule of Civil Procedure 55(b)(2) authorizes courts
to enter a default judgment against a properly served defendant
who fails to a file a timely responsive pleading."  Chanel v.
Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing
Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168,
177 n.9 (3d Cir. 1990)).  However, a party seeking default
judgment "is not entitled to a default judgment as of a right."
Franklin v. Nat'l Maritime Union of America, 1991 U.S. Dist.
LEXIS 9819, at *3-4 (D.N.J. 1991) (quoting 10 Wright, Miller &
Kane, Federal Practice and Procedure § 2685 (1983)), aff'd, 972
F.2d 1331 (3d Cir. 1992).  The decision to enter a default
judgment is "left primarily to the discretion of the district
court."  Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir.
1984).

Although every "well-pled allegation" of the complaint,
except those relating to damages, are deemed admitted, Comdyne
I. Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990), before
entering a default judgment the Court must decide whether "the
unchallenged facts constitute a legitimate cause of action,
since a party in default does not admit mere conclusions of
law," Chanel, 558 F. Supp. 2d at 535 (citing Directv, Inc. v.

Asher, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)).  "Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000); United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984).  If a review of the complaint demonstrates a valid cause of action, the Court must then determine whether plaintiff is entitled to default judgment.

**D.  Analysis**

This Court cannot grant Plaintiff the relief it seeks based on Plaintiff's complaint as currently pleaded.

As a primary matter, Plaintiff avers that this Court may exercise subject matter jurisdiction over this action pursuant to the Federal Arbitration Act.  That is incorrect.  Just like the Declaratory Judgment Act, 28 U.S.C. § 2201, the Federal Arbitration Act, 9 U.S.C. § 1 et seq., has only a procedural effect - neither statute creates subject matter jurisdiction in federal court.  See Mack Trucks, Inc. v. International Union, United Auto, Aerospace and Agr. Implement Workers of America, UAW, 856 F.2d 579, 583 (3d Cir. 1988) (citing Federal Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 351-52 (3d Cir. 1986) (explaining that the Declaratory Judgement Act provides a unique

7

procedural remedy to the litigants that choose to utilize it, and Fed. R. Civ. P. 57 provides for the use of the declaratory judgment remedy in the federal courts, but the remedy provided for in Rule 57 does not extend the jurisdiction of the federal courts)); Vaden v. Discover Bank, 556 U.S. 49, 58-59 (2009) (citations omitted) (explaining that "for jurisdiction over controversies touching arbitration," the Federal Arbitration Act is "something of an anomaly" in the realm of federal legislation: It "bestow[s] no federal jurisdiction but rather requir[es] [for access to a federal forum] an independent jurisdictional basis" over the parties' dispute.").

To present a valid cause of action, Plaintiff's complaint must meet two threshold requirements:[3] (1) the complaint must satisfy the elements of a statute which confers subject matter jurisdiction to this Court, such as 28 U.S.C. § 1331 or § 1332, independent of the Declaratory Judgment Act or the Federal Arbitration Act; and (2) Plaintiff's complaint must present a judicable case or controversy. See 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of

---

[3] These two requirements are primary to other necessary pleading requirements such as those set forth in Fed. R. Civ. P. 8, Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).

any interested party seeking such declaration, whether or not
further relief is or could be sought.  Any such declaration
shall have the force and effect of a final judgment or decree
and shall be reviewable as such."); Federal Kemper Ins. Co., 807
F.2d at 351-52 ("Every case brought under the [Declaratory
Judgment] Act still must fall within federal jurisdiction and
present a justiciable issue.  In the statutory language of §
2201, the remedy may only be granted whenever there is an
'actual controversy' based upon independent jurisdictional
grounds."); Vaden, 556 U.S. at 66 ("[W]e read § 4 [of the FAA]
to convey that a party seeking to compel arbitration may gain a
federal court's assistance only if, 'save for' the agreement,
the entire, actual 'controversy between the parties,' as they
have framed it, could be litigated in federal court.").

     As for the first threshold requirement, in addition to
citing to the Declaratory Judgment Act and the Federal
Arbitration Act, Plaintiff's complaint avers that this Court may
exercise subject matter jurisdiction over the action pursuant to
§ 1332 because (1) the parties are diverse in citizenship, and
(2) the amount in controversy exceeds $75,000.  However, while
potentially curable, the complaint as currently pled fails to
allege sufficient facts to establish the Court's jurisdiction.

     Regarding the citizenship of the parties, Plaintiff
contends that its citizenship is diverse from Defendant's

citizenship.  Plaintiff avers that it is a Delaware corporation with its principal place of business in Maple Shade, New Jersey. Thus, Plaintiff is a citizen of Delaware and New Jersey.

For Defendant, Plaintiff's complaint avers: "Ciprián is a foreign company located in Santo Domingo, Dominican Republic." (Docket No. 1 at 2, ¶ 2.)  This is not the proper articulation of Defendant's citizenship.  See 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business.").  Without the proper statement of Defendant's citizenship, the Court cannot determine whether the citizenship of the parties is diverse.[4]

Plaintiff also contends that the $75,000 amount-in-controversy requirement is met because the amount in controversy is in excess of $5 million.  That amount, however, is the amount in controversy between Defendant and Cedimat in the Dominican Republic arbitration, and not necessarily the amount in controversy between Plaintiff and Defendant.  Other than relating that Defendant purchased $1 million in flooring from Plaintiff, Plaintiff's complaint does not provide any

---

[4] The Court recognizes that the parties are likely of diverse citizenship for purposes of 28 U.S.C. § 1332.  Plaintiff will be granted leave to amend its complaint to properly assert the citizenship of the Defendant if it continues to seek relief in this Court.

information on the contractual terms between Plaintiff and
Defendant, including whether their contract contains an
indemnification provision, whether it sets forth any terms
regarding dispute resolution, or on what other legal or factual
basis it relies to assert that its stake in the arbitration
exceeds the jurisdictional minimum.  Although the dispute
between Plaintiff and Defendant may likely exceed $75,000,
Plaintiff fails to actually state, even with the most basic
facts, that the dispute between it and Defendant exceeds
$75,000.  That is the relevant jurisdictional requirement not
whether their dispute relates to commercial transactions that
Plaintiff asserts it has no relation to or responsibility for.

The burden is on Plaintiff to establish this jurisdictional
element.  See Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353
(1961) (explaining that the "general federal rule has long been
to decide what the amount in controversy is from the complaint
itself"); Angus v. Shiley Inc., 989 F.2d 142, 146 (3d Cir. 1993)
(explaining that the amount in controversy is measured by a
reasonable reading of the value of the rights being litigated);
Samuel-Bassett v. KIA Motors America, Inc., 357 F.3d 392, 396
(3d Cir. 2004) ("The party asserting jurisdiction bears the
burden of showing that at all stages of the litigation the case
is properly before the federal court.").  Consequently,
Plaintiff's complaint has not satisfied the first threshold

pleading requirement to establish this Court's subject matter jurisdiction, and absent adequate pleading could be dismissible on this basis.[5]  See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

For the second threshold pleading requirement, Plaintiff's complaint fails to present a judiciable case or controversy as it is currently pleaded.  A basic justiciability requirement is that each case decided by the federal courts must be a "case or controversy" - an action which by its nature is concrete and ripe.  Federal Kemper Ins. Co., 807 F.2d at 350.  The U.S. Supreme Court "succinctly described" this requirement:

> A "controversy" in this sense must be one that is appropriate for judicial determination.  A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot.  The controversy must be definite and concrete, touching upon the legal relations of parties having adverse legal interests.  It must be a real and substantial controversy admitting of specific relief

---

[5] Federal courts have an independent obligation to address issues of subject matter jurisdiction sua sponte and may do so at any stage of the litigation, Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 418 (3d Cir. 2010); Lincoln Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99, 104 (3d Cir. 2015) (citations omitted) ("The principal federal statute governing diversity jurisdiction, 28 U.S.C. § 1332, gives federal district courts original jurisdiction of all civil actions 'between . . . citizens of different States' where the amount in controversy exceeds $75,000.  For over two hundred years, the statute has been understood as requiring complete diversity between all plaintiffs and all defendants, even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for jurisdiction, no plaintiff [may] be a citizen of the same state as any defendant.").

through a decree of a conclusive character, as
distinguished from an opinion advising what the law would
be upon a hypothetical state of facts.

Id. (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227,
240-42 (1936)).

Here, Plaintiff alleges that "an actual controversy exists
regarding whether StonCor is obligated to participate in the
Dominican Republic Arbitration involving Ciprián and Cedimat,
and whether any decision rendered in that arbitration could be
enforced against StonCor." (Docket No. 1 at 7, ¶ 18.)
Plaintiff's contention that "an actual controversy exists" is
without substantive support from its pleading.

Plaintiff alleges, "StonCor was not a party to the
Ciprián/Cedimat Agreement, had no contractual relationship
whatsoever with Cedimat, and never consented to arbitrate any
dispute involving the Cedimat project, including in any
agreement between StonCor and Ciprián.  Nonetheless despite its
repeated objections StonCor is being coerced to arbitrate the
Cedimat dispute with Ciprián in the Dominican Republic
Arbitration in violation of its rights and the FAA." (Id. at 6,
¶ 15.)

Even accepting as true that Plaintiff was not a party to
Defendant's contract with Cedimat, and that Plaintiff did not
agree to arbitrate any dispute over the Cedimat project,
Plaintiff's complaint fails to establish the dispute is

13

sufficiently concrete and ripe to justiciable before this Court. Plaintiff alleges that it has been included in the arbitration proceeding, it has been "coerced" into participating, and that time is of the essence in granting its declaratory judgment because the arbitration is "currently pending and set to move forward." The complaint is silent, however, as to any other facts about the arbitration: Has Plaintiff been served? Has the arbitrator in the Dominican Republic deemed Plaintiff a necessary party that has been required to appear? Who has been "coercing" Plaintiff and how? Moreover, the arbitration was instituted in December 2017. Plaintiff's complaint, which was filed in January 2019, and Plaintiff's motion for default judgment, which was filed in October 2019, provide no information about what has been occurring in the arbitration for almost two years, and whether Plaintiff has been actually compelled by the Dominican Republic tribunal to participate.

Based on the complaint as pleaded, Plaintiff's request that this Court halt its involvement in the Dominican Republic arbitration presents at best a hypothetical circumstance that Plaintiff wishes to prevent. At worst, one can imagine things have gone badly in the Dominican Republic and Plaintiff seeks protection in this Court. Either way, Plaintiff has failed to allege sufficient facts to establish the nature of the existing controversy between the parties. On the current record, the

Court is left to speculate.  Any request for this Court to
intervene without more is inherently non-judiciable.

The Court recognizes that by its nature a request for a
declaratory judgment often presents a somewhat "hypothetical"
request for relief.  For example, in the usual case arising
under the FAA, a party seeking a declaration that a dispute must
be, or must not be, arbitrated is requesting relief to compel
the arbitration to occur, or prevent the arbitration from
occurring.  Thus, the relief sought is "hypothetical" in the
sense that the event - arbitration - has not happened yet.  But
this type of "hypothetical," which presents an actual and
imminent dispute, is distinguishable from what Plaintiff
currently presents here.

In the case where a party seeks a declaration as to its
obligation to arbitrate a dispute, a court must first consider
the arbitration agreement, and then determine whether the
dispute at issue falls within the scope of that agreement.
Century Indem. Co. v. Certain Underwriters at Lloyd's, London,
subscribing to Retrocessional Agreement Nos. 950548, 950549,
950646, 584 F.3d 513, 523-24 (3d Cir. 2009) (citations omitted).
The distinction between a judiciable claim and a non-judiciable
claim is that a judiciable claim concerns an arbitration
provision which exists in the first place for the Court to
consider.  See 9 U.S.C. § 2 (requiring that a provision in any

15

contract to settle by arbitration a controversy thereafter arising out of such contract must be in writing).

Here, Plaintiff not only asks this Court to declare that no agreement for it to arbitrate exists, but also to declare that Plaintiff should not be required to participate in the Dominican Republic arbitration pursuant to an arbitration provision that does not exist.  If there is no agreement for the Court to consider, then the Court cannot opine as to whether it does or does not apply to Plaintiff.  Additionally, as noted above, the complaint is unclear as to whether and how Plaintiff has been actually compelled to appear in the Dominican Republic arbitration such that a declaration that Plaintiff need not appear would have any effect.  This demonstrates why Plaintiff's hypothetical claim as currently pleaded is non-judiciable, unlike a judiciable claim to prevent or compel arbitration pursuant to a written arbitration provision.[6]

_____

[6] Another issue with Plaintiff's claim for relief is its attempted invocation of the FAA.  Plaintiff cites to no law that an arbitration between foreign entities is covered by the FAA. Where an arbitration provision covers entities from different countries, such provisions in international commercial agreements are ordinarily governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), codified at 9 U.S.C. § 201-208.  Regardless, however, of whether the FAA or the Convention applies, both require an arbitration provision to be in writing. See Cornell-Dubilier Electronics, Inc. v. Allianz Versicherungs AG, 2019 WL 460222, at *3 (D.N.J. 2019) (citing Standard Bent Glass Corp. v. Glassrobots Oy, 333 F.3d 440, 448-49 (3d Cir. 2003) (other citations omitted)) ("Where a dispute arises from an international commercial agreement, a court must address four

Furthermore, to the extent that Plaintiff asks this Court to consider the arbitration provision contained in the contract between Defendant and Cedimat,[7] Plaintiff has failed to articulate (1) how this Court has the authority to consider that contract and make a declaration as to Plaintiff's standing in the Dominican Republic arbitration proceeding, and (2) how that determination would be binding on the tribunal in the Dominican Republic.  In other words, Plaintiff has failed to aver why this Court - and not the arbitrator in the Dominican Republic - should determine the scope of the arbitration provision in an agreement between the two foreign contracting parties, and whether the scope of that arbitration should include Plaintiff. Plaintiff has also failed to aver how a judgment by this Court that Plaintiff is not required to participate in the Dominican Republic arbitration based on this Court's own interpretation of

_____

factors to determine whether the arbitration agreement falls under the Convention. Those factors are: 1) the existence of a written agreement; 2) that provides for arbitration in the territory of a signatory of the Convention; 3) that is also commercial in nature; and 4) which is not entirely domestic in scope.  If all four factors are satisfied, the court must order arbitration unless it determines the agreement is null and void.  This is a very limited inquiry, which leaves to the arbitrators procedural questions such as whether the parties satisfied any prerequisites or met conditions precedent to arbitration.").

[7] Even if Plaintiff requested such relief, Plaintiff has attached to its complaint the contract between Defendant and Cedimat, which is only in Spanish.  (Docket No. 1-1 at 2-9.)

that arbitration provision has any effect or force in the
Dominican Republic.[8]

Thus, even if this Court granted the relief Plaintiff
seeks, Plaintiff has failed to show how that relief would not
constitute an advisory decision without any legal force.
Plaintiff has also failed to show how granting it the relief it
seeks does not otherwise offend the principle of international
comity.  See, e.g., Petmas Investors Ltd. v. Sameiet Holbergs
Gate 19, 2014 WL 6886028, at *9 (D.N.J. 2014) ("In considering
whether a declaratory judgment would create friction between
courts of differing jurisdictions, courts are typically
concerned with the comity between the federal judiciary and the
various state courts within the United States.  This
consideration is equally applicable when the proposed judgment
would affect a matter pending in a foreign court because of the
principle of international comity. . . .") (citing Roberts v.
Mayor & Burgesses of the London Borough of Brent, 70 Fed. App'x
615 (3d Cir. 2003) (explaining that the plaintiff sought a
declaratory judgment that service of process in a British action
had violated the dictates of the Hague Service Convention, but
the district court denied the request, finding that the
inability to redress the alleged injury deprived the Court of

---

[8] The same is true if this Court determined that Plaintiff was
required to participate in the Dominican Republic arbitration.

18

subject matter jurisdiction and *sua sponte* dismissed the case, and the Third Circuit affirmed because the redressability of the injury alleged depended entirely upon the actions of the British court - "an independent actor not before the court" - and the plaintiff had not shown that the foreign court would abide by the determination of an American court); id. at *8 ("[As] in Roberts, enforcement of a judicial declaration would depend entirely on the conduct of the court in the Norway Action, an independent actor not before this Court.  Ultimately, even if this Court were to grant Plaintiff's request and issue a declaratory judgment as to the validity of the service of a subpoena upon Plaintiff, that order would have no effect on the Norway Action unless the Norwegian court decided to give it any weight, something it is not bound to do.  The undersigned therefore concludes that the relief sought would not settle the controversy.").

## CONCLUSION

Plaintiff's complaint as currently pleaded fails to establish subject matter jurisdiction because it has not properly set forth the requirements of 28 U.S.C. § 1332, and because it fails to state an actual case or controversy justiciable in this Court.  Consequently, the Court must deny Plaintiff's motion for default judgment on this record.  The Court will also direct Plaintiff to show cause as to why its

complaint, even assuming it could cure the deficiencies under 28 U.S.C. § 1332, should not be dismissed for failure to present a judiciable case or controversy.  Plaintiff may file an amended complaint in response to the Court's order, if it can do so consistent with this Court's Opinion.

An appropriate Order will be entered.


Date: June 29, 2020                    s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.